[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 585 
Timothy Lee Harris was convicted of trafficking in marijuana, a violation of § 13A-12-23K1), Ala. Code 1975. He was sentenced, as a habitual felony offender, to life imprisonment.
On appeal, Harris contends that the trial court erred in denying his motion to suppress the marijuana evidence found as a result of a warrantless search of his automobile because, he says, the search did not fall within the automobile exception to the warrant requirement. Specifically, he argues (1) that there was no probable cause to search his vehicle, and (2) that his vehicle was parked on private property at the time of the search and the automobile exception, even if there was probable cause to search, does not apply to vehicles parked on private property.
The evidence adduced at the suppression hearing and at trial indicated the following.[1] Carlton Ott, a corporal with the Dothan Police Department assigned to the vice-intelligence division, testified that on August 19, 1999, he received information from a confidential informant, who had provided reliable information in the past, that Harris was in possession of a large amount of marijuana at his residence at 2401 Brown Street. The informant said that he had seen Harris in possession of the marijuana within the last few hours; that the marijuana was located in Harris's white Plymouth Laser automobile, which was parked outside the residence; and that a second automobile, a white Mazda 929, was also parked outside the residence. That evening, approximately six hours after receiving the information from the informant, Cpl. Ott and Mark Nelms, a sergeant in the vice-intelligence division of the Dothan Police Department, set up surveillance at Harris's residence, a mobile home, to corroborate the information received from the informant. They saw both vehicles described by the informant parked in the front yard of the mobile home.
Cpl. Ott testified that at approximately 10:10 p.m. they saw Harris leave the mobile home and get in the Plymouth Laser. According to Cpl. Ott, Harris sat in the vehicle for a few minutes until a black female drove up in a maroon Hyundai Sonata automobile and parked on the street in front of the residence. At that point, Cpl. Ott said, Harris got out of the Plymouth Laser and got into the Hyundai Sonata; Harris and the driver of the Sonata sat in the vehicle for a few minutes and then drove away. Cpl. Ott then radioed two backup officers and told them to stop the Sonata. Cpl. Ott said that he saw no bulges in Harris's clothing when he got out of the Laser and into the Sonata; that he had no information on the driver of the *Page 586 
Sonata; and that no arrests were made during the stop. According to Cpl. Ott, no more than three minutes after the stop was completed, the Sonata returned to Harris's residence, Harris got out of the Sonata and got in the Laser, and then drove the Laser toward the back of the mobile home. At that point, Cpl. Ott said, they decided to "move in" because "[i]t was obvious . . . that criminal activity was taking place." (R. 28.)
Cpl. Ott and Sgt. Nelms, as well as the officers who had stopped the Sonata, entered the premises and met Harris as he was walking around from the back to the front of the mobile home. They detained Harris and conducted a Terry[2]
patdown of his person. Cpl. Ott testified that Harris told him that his mother was inside the residence, and Cpl. Ott then knocked on the front door. According to Cpl. Ott, he informed Harris's mother that he had information that Harris was in possession of marijuana, and Harris's mother gave him permission to search her mobile home. Cpl. Ott testified that Harris did not appear nervous about the search of the mobile home. However, shortly after detaining Harris, Cpl. Ott called for a K-9 unit to come to the residence so that a drug-sniffing dog could sniff the Laser. When Harris heard that Cpl. Ott had called for a K-9 unit, Cpl. Ott said, Harris became nervous and began calling for his mother. Cpl. Ott then asked Harris for the key to the Laser, and Harris handed him a key. However, Cpl. Ott recognized that the key Harris gave him was not a Chrysler-product key and he then asked Harris if he was sure this was the key to the Laser. According to Cpl. Ott, Harris told him that the key fit the Mazda 929 and that he did not have a key to the Laser. Cpl. Ott testified that the officer who had conducted the patdown of Harris told him that Harris had another key ring in the pocket of his shorts and Cpl. Ott then reached in Harris's pocket and retrieved the key to the Laser.
Shortly after Cpl. Ott retrieved the key, the K-9 unit arrived, and the K-9 officer walked his dog around the Laser; the dog alerted to the presence of narcotics at the rear of the vehicle. At that point, Cpl. Ott used the key to open the vehicle and discovered in the rear hatchback portion of the vehicle three one-gallon Ziploc brand plastic bags that were later determined to contain 2.92 pounds of marijuana. In addition, a large amount of currency was found in the center console, various papers with Harris's name on them were found in the glove compartment, and the registration indicated that the vehicle was registered to "Tim or Patricia Harris." (R. 74.)
 Standard of Review [2] "When an appellate court reviews the findings and holdings of a trial court resulting from a hearing on a motion to suppress evidence, if the evidence before the trial court was undisputed, the `ore tenus rule,' pursuant to which the trial court's conclusions on issues of fact are presumed correct, is inapplicable, and the reviewing court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts."
Ex parte Kelley, 870 So.2d 711, 714 (Ala. 2003). Here, the evidence was undisputed; the only issue is whether the trial court properly applied the law regarding probable cause and the automobile exception to the warrant requirement to the undisputed facts. Therefore, we review de novo the trial court's denial of Harris's motion to suppress. *Page 587 
 Probable Cause
"A warrantless search of a vehicle is justified where there is probable cause to believe the vehicle contains contraband."Lykes v. State, 709 So.2d 1335, 1337 (Ala.Crim.App. 1997).
 "`Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.' Sheridan v. State, 591 So.2d 129, 130 (Ala.Cr.App. 1991). `The requisite probable cause is present "if a reasonably prudent person, based on the facts and circumstances which the officer knows, would be justified in concluding that the items sought are connected with criminal activity and that they will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213
[103 S.Ct. 2317, 76 L.Ed.2d 527] . . . (1983)."' Day v. State, 539 So.2d 410, 413-14
(Ala.Cr.App. 1988). `"The test for probable cause is `whether the facts available to the officer at the moment of the seizure or search, would warrant a man of reasonable caution to believe that the action taken was appropriate.'"' Ivey v. State, 698 So.2d 179, 185-86 (Ala.Cr.App. 1995), aff'd, 698 So.2d 187 (Ala. 1997) (quoting Riley v. State, 583 So.2d 1353, 1355 (Ala.Cr.App. 1991))."
Johnson v. State, 719 So.2d 272, 273
(Ala.Crim.App. 1998). "Probable cause to search a vehicle exists when all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and the vehicle contains contraband." State v.Odom, 872 So.2d 887, 891 (Ala.Crim.App. 2003). See alsoState v. Ivey, 709 So.2d 502, 505 (Ala.Crim.App. 1997) ("Probable cause to believe a vehicle contains contraband exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that a search of the vehicle would produce contraband.").
"`Probable cause is concerned with "probabilities," that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act."'" Chevere v. State, 607 So.2d 361,368 (Ala.Crim.App. 1992), quoting Carter v. State,435 So.2d 137, 139 (Ala.Crim.App. 1982), quoting in turn Brinegarv. United States, 338 U.S. 160, 175, 69 S.Ct. 1302,93 L.Ed. 1879 (1949).
 "`Probable cause does not require an officer to compile an airtight case against a suspect.' Williams v. State, 440 So.2d 1139, 1145
(Ala.Cr.App. 1983). `It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief that certain items may be contraband . . . it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.' Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted)."
Mewbourn v. State, 570 So.2d 805, 808-09
(Ala.Crim.App. 1990). "`"[P]robable cause does not require certainty of criminal activity, but only probability. . . . First-hand observations of criminal activity by a reliable informant in conjunction with police corroboration of factual details provides just this probability."'" Harrelson v.State, 897 So.2d 1237, 1241 (Ala.Crim.App. 2004), quotingMcBride v. State, 492 So.2d 654, 658
(Ala.Crim.App. 1986), quoting in *Page 588 
turn United States v. Thompson, 751 F.2d 300, 302
(8th Cir.1985).
Initially, we note that on appeal Harris confines his probable-cause argument to those circumstances that occurred before the officers' entry onto his premises. However, he does not challenge on appeal the officers' entry onto his premises, the Terry patdown of his person, the search of his pocket to obtain the key to the Laser, or the use of the drug-sniffing dog.[3] Therefore, he has waived any inquiry into the propriety of those actions, and this Court, in determining whether probable cause existed, can and will consider all of the circumstances within the officers' knowledge at the time of the search, including those circumstances that occurred after the officers' entry onto Harris's premises.
Considering the totality of the circumstances, we conclude that there clearly was probable cause to search Harris's vehicle. Within a few hours of receiving information from a reliable confidential informant that Harris was in possession of a large amount of marijuana, which was located in his white Plymouth Laser automobile at his residence, Cpl. Ott and Sgt. Nelms conducted surveillance at Harris's residence and confirmed that both vehicles the informant had described as being at the residence were, in fact, parked in front of the residence. During their surveillance, Cpl. Ott and Sgt. Nelms saw Harris come out of his residence, sit in the Laser for a few minutes, and then leave in a Hyundai Sonata that had arrived at the residence. Although a stop of the Sonata did not result in any arrests, within three minutes after the stop, Harris returned and pulled the Laser around the back of his residence. When the officers first approached Harris on his premises and obtained consent from his mother to search the residence, Harris did not appear nervous; however, when Harris discovered that a K-9 unit had been called to sniff the Laser, he became nervous and began calling for his mother. In addition, when asked for the key to the Laser, Harris gave the officers the key to the other vehicle parked at the residence and claimed that he did not have a key to the Laser. Harris, however, had just driven the Laser from the front to the back of the mobile home and the key to the Laser was discovered in Harris's pocket. Finally, when the drug-sniffing dog arrived at the scene and circled the vehicle, it alerted near the rear of the vehicle. These circumstances would warrant a person of reasonable caution to conclude that the Laser contained contraband. Therefore, there was probable cause to search the vehicle.
 Automobile Exception
In California v. Carney, 471 U.S. 386,105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the United States Supreme Court explained the automobile exception to the warrant requirement as follows:
 "The Fourth Amendment protects the `right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer. *Page 589 
There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken; one is the so-called `automobile exception' at issue in this case. This exception to the warrant requirement was first set forth by the Court 60 years ago in Carroll v. United States,267 U.S. 132 (1925). There, the Court recognized that the privacy interests in an automobile are constitutionally protected; however, it held that the ready mobility of the automobile justifies a lesser degree of protection of those interests. The Court rested this exception on a long-recognized distinction between stationary structures and vehicles:
 "`[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Id., at 153 (emphasis added).
"The capacity to be `quickly moved' was clearly the basis of the holding in Carroll, and our cases have consistently recognized ready mobility as one of the principal bases of the automobile exception. See, e.g., Cooper v. California,386 U.S. 58, 59 (1967); Chambers v. Maroney,399 U.S. 42, 52 (1970); Cody v. Dombrowski 413 U.S. 433, 442
(1973); Cardwell v. Lewis, 417 U.S. 583, 588 (1974);South Dakota v. Opperman, 428 U.S. 364, 367 (1976). InChambers, for example, commenting on the rationale for the vehicle exception, we noted that `the opportunity to search is fleeting since a car is readily movable.' 399 U.S., at 51. More recently, in United States v. Ross, 456 U.S. 798,806 (1982), we once again emphasized that `an immediate intrusion is necessary' because of `the nature of an automobile in transit. . . .' The mobility of automobiles, we have observed, `creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.' South Dakota v. Opperman,supra, at 367.
"However, although ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. 428 U.S., at 367. `Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.'Ibid.
"Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception. See, e.g., Cody v. Dombrowski, supra. In some cases, the configuration of the vehicle contributed to the lower expectations of privacy; for example, we held inCardwell v. Lewis, supra, at 590, that, because the passenger compartment of a standard automobile is relatively open to plain view, there are lesser expectations of privacy. But even when enclosed `repository' areas have been involved, we have concluded that the lesser expectations of privacy warrant application of the exception. We have applied the exception in the context of a locked car *Page 590 
trunk, Cady v. Dombrowski supra, a sealed package in a car trunk, Ross, supra, a closed compartment under the dashboard, Chambers v. Maroney, supra, the interior of a vehicle's upholstery, Carroll, supra, or sealed packages inside a covered pickup truck, United States v.Johns, 469 U.S. 478 (1985).
"These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. Cady v. Dombrowski, supra, at 440-441. As we explained in South Dakota v. Opperman, an inventory search case:
 "`Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.' 428 U.S., at 368.
"The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation. Historically, `individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts.' Ross, supra, at 806, n. 8. In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.
 "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes — temporary or otherwise — the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable."
471 U.S. at 390-93, 105 S.Ct. 2066 (footnote omitted). No additional exigent circumstances are required for the warrantless search of a vehicle; probable cause alone is sufficient to bring a search within the automobile exception. See Pennsylvania u. Labron, 518 U.S. 938, 940,116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), wherein the United States Supreme Court upheld the warrantless search of a vehicle parked in the driveway of a farmhouse, and stated that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." See also Maryland v. Dyson,527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), wherein the United States Supreme Court, reaffirming its holding in Labron, stated:
 "The Fourth Amendment generally requires police to secure a warrant before conducting a search. California v. Carney, 471 U.S. 386, 390-391
(1985). As we recognized nearly 75 years ago in Carroll v. United States, 267 U.S. 132, *Page 591 
153 (1925), there is an exception to this requirement for searches of vehicles. And under our established precedent, the `automobile exception' has no separate exigency requirement. We made this clear in United States v. Ross, 456 U.S. 798, 809 (1982), when we said that in cases where there was probable cause to search a vehicle `a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.' (Emphasis added.) In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), Pennsylvania v. Labron, 518 U.S. 938
(1996) (per curiam,), we repeated that the automobile exception does not have a separate exigency requirement: `If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.' Id., at 940.
 "In this case, the Court of Special Appeals found that there was `abundant probable cause' that the car contained contraband. This finding alone satisfies the automobile exception to the Fourth Amendment's warrant requirement, a conclusion correctly reached by the trial court when it denied respondent's motion to suppress. The holding of the Court of Special Appeals that the `automobile exception' requires a separate finding of exigency in addition to a finding of probable cause is squarely contrary to our holdings in Ross and Labron. We therefore grant the petition for writ of certiorari and reverse the judgment of the Court of Special Appeals."
In arguing that the automobile exception to the warrant requirement does not apply to a vehicle parked on private property, Harris principally relies on the last paragraph inCarney quoted above, specifically, the following statement: "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationaryin a place not regularly used for residential purposes
— temporary or otherwise — the two justifications for the vehicle exception come into play." 471 U.S. at 392-93,105 S.Ct. 2066 (footnote omitted; emphasis added). However, Harris's reliance on this single sentence is misplaced.
As the South Carolina Supreme Court explained in State v.Cox, 290 S.C. 489, 351 S.E.2d 570 (1986):
 "In a plurality opinion the Court [of Appeals of South Carolina] held the `automobile exception' to the warrant requirement was not applicable because Cox's car was found at his residence. The Court, relying upon California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), concluded that `an automobile found parked at a person's home is protected from warrantless searches.' 287 S.C. [260,] 264, 335 S.E.2d [809,] 811 [(Ct.App. 1985)].
 "We disagree.
 "The automobile exception was first articulated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Since Carroll, the doctrine has been applied on a case-by-case basis to various sets of facts. See generally cases cited in Annot., 66 L.Ed.2d 882, Validity of Warrantless Search of Motor Vehicles.
 "The two bases for the exception are: (1) the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained; and (2) the lessened expectation of privacy in motor vehicles which are subject to governmental regulation. *Page 592 
"The source of the Court of Appeals' ruling is the following language from Carney:
 "`When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes — temporary or otherwise — the two justifications for the vehicle exception come into play.' [Emphasis supplied].
"471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414.
"The plurality interpreted this to mean that the automobile exception does not apply to any vehicle parked at a residence. However, Carney dealt with a motor home, or camper vehicle. Even though the language cited above may appear to apply to all motor vehicles, a close reading, in context, makes it clear that the Court was addressing only the inapplicability of the exception as to motor homes set up on a site and used as a residence. In the same paragraph from which the above sentence is cited, the Carney Court states `there is a reduced expectation of privacy stemming fromits use as a licensed motor vehicle subject to a range of police regulations inapplicable to a fixed dwelling.' [Emphasis supplied]. 471 U.S. at 393, 105 S.Ct. at 2070,85 L.Ed.2d at 414. The emphasized pronoun `its' in this sentence clearly refers to a motor home.
"No prior Supreme Court cases have recognized a distinction between vehicles parked in public and private places. Indeed, such a distinction would not harmonize with the Court's reasoning in automobile search cases.
"The Carney Court makes clear that under the automobile exception, probable cause alone is sufficient to justify a warrantless search. As the Court stated, `the pervasive schemes of regulation,
 which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches [of vehicles] without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met' [Emphasis supplied]. 471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414. That is, the inherent mobility of automobiles provides the requisite exigency."
290 S.C. at 491-92, 351 S.E.2d at 571-72. We agree.Carney involved the warrantless search of a motor home, readily capable of use either as a home or as a vehicle. In upholding the warrantless search under the automobile exception to the warrant requirement, the United States Supreme Court relied in part on the location of the motor home — in a parking lot in downtown San Diego — in concluding that the motor home was "so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle." Carney, 471 U.S. at 393, 105 S.Ct. 2066. Indeed, the Court pointed out that it "need not pass on the application of the vehicle exception to a motor home that is situated in a way or place that objectively indicates that it is being used as a residence." 471 U.S. at 394 n. 3,105 S.Ct. 2066. Thus, the Court's statement in Carney that the automobile exception applies when a vehicle is found "in a place not regularly used for residential purposes,"471 U.S. at 392, 105 S.Ct. 2066, was a reference to the limitation of the automobile exception to motor homes (or other objects that are equally capable of use as either a home or a vehicle) that are situated in such a place and in such a manner as to indicate their use as vehicles rather than homes.
Other courts have similarly construed this language inCarney. In United States v. Brookins,345 F.3d 231 (4th Cir.2003), *Page 593 
the United States Court of Appeals for the Fourth Circuit stated:
 "On appeal, Brookins proposes an interpretation of the `automobile exception,' which he grounds largely in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)[4] In Coolidge, the Supreme Court, by the opinion of a four-justice plurality, declined to apply Carroll [v. United States, 267 U.S. 132 (1925),] under circumstances evincing no exigency whatsoever. Specifically, the defendant's automobile was parked in his own driveway and contained no contraband. Additionally, the police had developed probable cause well in advance of the warrantless search. Brookins maintains that Coolidge represents the sole Supreme Court decision to address `head-on' the warrantless search of an automobile at a private residence. Based upon the facts of Coolidge, Brookins would posit a bright-line rule, whereby the automobile exception may never apply when a vehicle is stationed on private, residential property.
 "Brookins seeks additional support for this theory in California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), where the Supreme Court held that a mobile home, on the facts presented, was more characteristic of an automobile than a fixed residence. The Court did look to the nature of the location where the vehicle was discovered, but only to ascertain whether the vehicle itself was, in an ontological sense, in use as a `movable vessel' or as a fixed residence. Hence, the Court's reference to a `place not regularly used for residential purposes,' Carney, 471 U.S. at 392, 105 S.Ct. 2066
— from which the police would be less likely to infer that the object was residential in nature — served as a guidepost to determine, ab initio, whether the object encountered was a vehicle or a residence. After considering these circumstances, the Court concluded that the warrantless search of the mobile home was covered by the `automobile exception.' Id. at 394, 105 S.Ct. 2066. Brookins' invocation of Carney
to buttress his reading of Coolidge as generating a bright-line approach to the application of the `automobile exception' is therefore flawed. The Supreme Court has expressly held that the `automobile exception' is applicable `[i]f a car is readily mobile and probable cause exists to believe it contains contraband.' [Maryland v.] Dyson, 527 U.S. [465,] 466, 119 S.Ct. 2013 [(1999)] (internal quotation and citation omitted).
 "In light of the Supreme Court's holding in Dyson, we find the `automobile exception' applicable to the case before us. First, the motor vehicle at issue was clearly operational and therefore `readily movable.' Second, as discussed in greater detail above, the police officers had probable cause to conclude that there was contraband in the vehicle, as the party responsible for the vehicle's flight, Brookins' wife, was present on the scene at her mother's home. Given these facts, the warrantless search of Brookins' vehicle by law enforcement officers did not violate his Fourth Amendment rights.
 We decline to adopt this construction of Coolidge. Nor do we find it necessary to determine the contours of the expectation of privacy in and around one's private property. Although *Page 594 
heightened privacy interests may be triggered when a vehicle is encountered on private property, the Coolidge plurality opinion cannot be fairly read to create a bright-line rule precluding warrantless searches on private property under all circumstances."
345 F.3d at 237-38. Similarly, in State v. Marquardt,247 Wis.2d 765, 635 N.W.2d 188 (Ct.App. 2001), the Wisconsin Court of Appeals noted:
 "Despite the `public place' language that appears in [various Wisconsin] cases, we conclude that the automobile exception is nonetheless applicable to Marquardt. The genesis of the language was [California v.] Carney, [471 U.S. 386 (1985),] which involved the search of a fully mobile motor home located in a public place. See Carney, 471 U.S. at 387, 105 S.Ct. 2066. United States Supreme Court cases subsequent to Carney have not recognized a public place requirement for the automobile exception. See, e.g., [Maryland v.] Dyson, 527 U.S. [465,] 467, 119 S.Ct. 2013
[(1999)]. Thus, to the extent that Carney
ever intended to impose a public place requirement, it is no longer applicable."
247 Wis.2d at 790, 635 N.W.2d at 200. See also UnitedStates v. Fladten, 230 F.3d 1083 (8th Cir.2000);United States v. Markham, 844 F.2d 366 (6th Cir.1988);United States v. Moscatiello, 771 F.2d 589 (1st Cir.1985), vacated on other grounds sub nom. Carter v.United States, 476 U.S. 1138, 106 S.Ct. 2241,90 L.Ed.2d 688 (1986); United States v. Hamilton, 792 F.2d 837
(9th Cir.1986); People v. Garvin, 235 Mich.App. 90,597 N.W.2d 194 (1999); and Commonwealth v. A Juvenile (No.2), 411 Mass. 157, 580 N.E.2d 1014 (1991) (all upholding warrantless searches of vehicles parked on private property).
There appears to be a consensus among other jurisdictions that the language in Carney does not indicate a per se rule precluding application of the automobile exception to vehicles parked on private property, but there also appears to be a split among jurisdictions as to whether Carney requires the presence of exigent circumstances, beyond the ready mobility of vehicles, before the automobile exception is applicable to a vehicle parked on private property. See, e.g., UnitedStates v. Shepherd, 714 F.2d 316, 319-20 (4th Cir.1983) ("[T]he danger posed by the inherent mobility of an automobile must out-weigh whatever enhanced privacy interest exists when the car is parked at home if it appears the car is about to take flight."); State v. Lejeune, 276 Ga. 179, 183,576 S.E.2d 888, 893 (2003) (holding "that the automobile exception does not apply where . . . the suspect's car was legally parked in his residential parking space [and] the suspect and his only alleged cohort were not in the vehicle or near it and did not have access to it"), and State v. Roaden,98 Ohio App.3d 500, 504, 648 N.E.2d 916, 919 (1994) ("[A]bsent exigent circumstances, the automobile exception does not apply to the warrantless search or seizure of an automobile from the driveway of a private residence.").[5] In United States v. Reis,906 F.2d 284 (7th Cir.1990), the United States Court of Appeals for the Seventh Circuit explained:
 "The automobile exception allows vehicles that are being used on the high *Page 595 
way or are readily capable of such use to be searched without a warrant `so long as the overriding standard of probable cause is met.' California v. Carney, 471 U.S. 386, 392, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406, 414 (1985). The reasons underlying the exception are twofold: The reduced expectation of privacy an individual has in a car, and the `exigencies attendant to ready mobility' of the vehicle combine to create a situation justifying a search without taking the time to obtain the prior approval of a magistrate. Id., 471 U.S. at 392-93, 105 S.Ct. at [2070], 85 L.Ed.2d at 414; United-States v. Rivera, 825 F.2d 152, 158 (7th Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987).
 "Reis, however, points out that the Supreme Court stated in Carney that the automobile exception is applicable `[w]hen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes.' California v. Carney, 471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414 (emphasis added). Reis argues that because his car was in a place that is regularly used for residential purposes [parked in the street in front of his residence], the above-quoted language from Carney renders the automobile exception inapplicable, unless exigent circumstances can be shown to exist.
 "Reis misconstrues the meaning of Carney. In that case, the Supreme Court was faced with the issue of whether a mobile home comes within the automobile exception, and the Court looked to the location where the vehicle was parked solely for the purpose of determining whether the mobile home was being used more like an automobile (so that it would come within the exception) or more like a residence (so that a heightened expectation of privacy would exist, necessitating either a warrant or the existence of exigent circumstances before a search properly could be carried out). Carney does not establish a requirement that additional exigent circumstances be present merely because an automobile is parked at a residence.
 "Indeed, this circuit and others have, either expressly or implicitly, construed Carney as recognizing that the inherent mobility of automobiles by itself provides the only exigent circumstance needed, so that as long as probable cause exists to search an automobile, that automobile may be searched without a warrant. See e.g., United States v. Paulino, 850 F.2d 93, 96 (2d Cir.1988), cert. denied, [490] U.S. [1052], 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989); United States v. Markham, 844 F.2d 366, 369 (6th Cir.1988); United States v. Rivera, 825 F.2d [152,] 158 [(7th Cir.1987)]; Autoworld [Specialty] Cars, Inc. v. United States, 815 F.2d 385, 389 (6th Cir.1987); United States v. Bagley, 772 F.2d 482, 490-91 (9th Cir.1985), cert. denied, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986). Even in circuits which construe Carney as imposing a requirement that additional exigent circumstances be demonstrated before the automobile exception is applicable, see, e.g., United States v. Alexander, 835 F.2d 1406, 1409-10 (11th Cir.1988); United States v. Hepperle, 810 F.2d 836, 840 (8th Cir.), cert. denied, 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987), circumstances such as those found in this case — the car parked out-side the arrestee's residence, with the possibility of either the registered owner or family members of the arrestee removing the car or destroying evidence in the car before a warrant could be obtained — have been found to constitute *Page 596 
exigent circumstances sufficient to activate the automobile exception. See, e.g., United States v. Alexander, 835 F.2d at 1410. Furthermore, the fact that the detectives could have obtained a warrant in the hours between the initial encounter on the freeway and the arrest, but did not, does not change this analysis. `Clearly, the Carney
majority . . . did not contemplate that an agent's inability to obtain a search warrant be a prerequisite to the application to the automobile exception.' United States v. Markham, 844 F.2d at 369."
906 F.2d at 290-91.
We have found no cases by either this Court or the Alabama Supreme Court squarely addressing this issue; however, this Court has touched on the issue in two cases. In Robinette v.State, 531 So.2d 682 (Ala.Crim.App. 1987), rev'd on other grounds, 531 So.2d 697 (Ala. 1988), this Court upheld the search of a vehicle parked in the yard of a residence at which law-enforcement officers had executed a search warrant. This Court held that the search was within the scope of the warrant, but, in the alternative, stated that the search also fell within the automobile exception to the warrant requirement. In analyzing the automobile exception, this Court noted:
 "Most of the cited cases deal with vehicles located on public highways and in parking lots. In the instant case, the vehicle in question was parked on private property; it was parked within the curtilage of the Hatcher residence. The courts have recognized that a car traveling on a public highway is afforded less privacy than the home, but that one's expectation of privacy in a vehicle is enhanced when the car is nestled in the driveway. Coolidge v. New Hampshire, [403 U.S. 443 (1971)]; Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41
L.Ed.2d 325 (1974); United States v. Shepherd,714 F.2d 316 (4th Cir.1983), cert. denied, 466 U.S. 938,104 S.Ct. 1914, 80 L.Ed.2d 462 (1984). We find in 3 W. LaFave,[Search and Seizure] § 7.2(b) (2d ed.1987), the following:
 "`To the extent that the vehicle search cases continue to emphasize the existence of such [exigent] circumstances, they may have somewhat greater legitimacy. It is well to stress once again, however, that these cases generally utilize a very loose and uncritical type of exigent circumstances inquiry, quite different from that which would be employed if the warrantless search were of premises. In this sense, then, these decisions are unquestionably relying also upon the notion that vehicles carry with them a lesser expectation of privacy. (This means that genuine exigent circumstances must exist when the car can be searched only by first intruding inside private premises to gain access to the vehicle, for the lesser expectation of privacy does not also extend to premises housing a vehicle.)' (Footnote omitted, emphasis added [in Robinette].)
 "Accordingly, out of abundance of caution, we have reviewed the circumstances of the instant search for the existence of exigent circumstances and conclude that the search of Robinette's vehicle, following his activities in the house leading to his arrest, was based on probable cause and exigent circumstances and, thus, did not violate the Fourth Amendment guarantees against unreasonable searches."
531 So.2d at 692-93. This Court did not specifically hold inRobinette that additional exigent circumstances were required before the automobile exception could be applied to vehicles parked on private property, *Page 597 
but merely noted "out of [an] abundance of caution" that there were exigent circumstances present. 531 So.2d at 693.
In Stanfield v. State, 529 So.2d 1053
(Ala.Crim.App. 1988), this Court upheld the search of a vehicle parked in a public parking space at an apartment complex where law-enforcement officers had executed a search warrant for one of the apartments. After concluding that the search was valid under the automobile exception to the warrant requirement absent any additional exigent circumstances, we noted:
 "Upon this authority, we hold, generally, a vehicle may be searched on probable cause without a warrant and without a demonstration of any exigent circumstances other than its own inherent or ready mobility. The exception to this general rule applies when the vehicle is located on premises where the defendant has a legitimate expectation of privacy, see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Robinette v. State, [531 So.2d 682 (Ala.Crim.App. 1987), rev'd on other grounds, 531 So.2d 697 (Ala. 1988)]. . . ."
529 So.2d at 1060. This statement, however, was merely dicta because the vehicle in that case was not on private property.
We agree with those jurisdictions cited above that have held that the automobile exception applies to vehicles located on private property without any additional exigency requirement. This view appears to be more in line with the underlying rationales for the automobile exception — the ready mobility and pervasive regulation of vehicles — and with the more recent pronouncements on the exception by the United States Supreme Court. The location of the vehicle does not change the inherent mobility and regulation of a vehicle. And inLabron, supra, the United States Supreme Court reversed the Pennsylvania Supreme Court's holding that the warrantless search of a vehicle parked in the driveway of a farmhouse was invalid under the automobile exception to the warrant requirement absent additional exigent circumstances on the ground that the holding "rest[ed] on an incorrect reading of the automobile exception to the Fourth Amendment's warrant requirement." 518 U.S. at 939, 116 S.Ct. 2485. Although the location of the vehicle does not appear to have been a specific issue in the case, it is nevertheless instructive that the Supreme Court held that the search was valid based on probable cause alone and absent any additional exigent circumstances. Therefore, to the extent that Robinette andStanfield imply that the automobile exception to the warrant requirement does not apply to vehicles parked on private property without any additional exigent circumstances, they are hereby overruled.
 Conclusion
In this case, there was probable cause to search Harris's vehicle, and the search of the vehicle was valid under the automobile exception to the warrant requirement without more. Therefore, the trial court properly denied Harris's motion to suppress.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] This Court may consider both the evidence at the suppression hearing and at trial in determining whether the denial of a motion to suppress was proper. See, e.g., Exparte Price, 725 So.2d 1063 (Ala. 1998).
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968).
[3] In his brief, Harris makes the following statement: "When Harris returned to his home [after the traffic stop of the Hyundai Sonata], the officers intruded without probable cause upon Harris's premises. [The] officers intruded not with knowledge of a crime in progress, but upon a suspicion, to simply determine if a resident engaged in a crime." (Harris's brief at p. 15.) To the extent that Harris intended this single sentence to be a challenge to the officers' entry onto his premises, it fails to comply with Rule 28(a)(10), Ala.R.App.P., and, thus, is deemed to be waived.
[4] Although not cited in his brief on appeal, Harris relied in large part on Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), in arguing his motion to suppress in the trial court.
[5] We note that, except for the Georgia case, these cases were decided before the United States Supreme Court's specific disavowance of any separate exigency requirement for the automobile exception in Dyson and Labron, supra. Therefore, it is unclear whether those courts would continue to hold that additional exigent circumstances are necessary when a vehicle is parked on private property. *Page 598