# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2697

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| CRAIG EUGENE SPARKS, | * | South Dakota. |
| a/k/a Craig Miller, | * | |
| a/k/a Craig Anderson, | * | |
| a/k/a Phillip Richman, | * | |
| | * | |
| Defendant - Appellant. | * | |

Submitted: December 11, 2001
Filed: February 28, 2002

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and FENNER,[2] District Judge.

FENNER, District Judge.

_____

[1] The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

Craig Eugene Sparks asserts that his Motion to Suppress Evidence was improperly denied by the district court[3] for three reasons: (1) Sparks asserts that the district court erred by failing to hold that his initial traffic stop violated his constitutional rights under the Fourth Amendment; (2) Sparks asserts that even if the arresting officer was authorized to stop Sparks, the scope of the stop was unreasonable, and; (3) Sparks contends that his consent to search was not voluntary, nor did it vitiate any previous constitutional violations. For the following reasons, we find that the district court correctly denied Sparks' Motion to Suppress Evidence. Consequently, the judgment of district court is hereby AFFIRMED.

## I. Facts

On March 29, 1997, Officer Boyd Dean observed a white GMC Suburban with a trailer parked at a service station in Spearfish, South Dakota. Officer Dean called in the license plate on the Suburban to request a registration check. The dispatcher mistyped the information given by Officer Dean and informed him that the plate was registered to a 1983 Chevy CTX. The dispatcher subsequently informed Officer Dean of the error and that the correct license plate information revealed that the license plate had expired one month prior.[4] Officer Dean, upon receiving one or both pieces of information from the dispatcher, initiated the stop.

Officer Dean informed Sparks of the reason for the stop and asked Sparks for his driver's license, proof of insurance, and vehicle registration. Sparks informed Officer Dean that his wallet had been stolen with his license inside. Furthermore, Sparks stated

---

[3]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

[4]The parties disagree as to when exactly Officer Dean was informed regarding the dispatcher's error. In an earlier hearing, Officer Dean testified that he was informed before he initiated the stop. Subsequently, Officer Dean testified that he was not informed until after the stop was initiated.

that his girlfriend had purchased the Suburban for him and that she had the registration for the vehicle. Regarding insurance, Sparks was able to produce an "insurance letter" stating that the vehicle was insured. Sparks informed Officer Dean that his name was Phillip Michael Richman.

Officer Dean asked Sparks to accompany him back to Dean's patrol car so that he could verify that Sparks possessed a valid license. Sparks refused and remained in the Suburban. Officer Dean called the dispatcher and was informed that Phillip Richman possessed a valid license without restrictions. Furthermore, the physical description on the license matched that of Sparks. Additionally, the VIN number given by Officer Dean revealed that the Suburban was registered to Robert Gillmore of Oklahoma, not Phillip Richman, the name Sparks had given, and not a female as Sparks had informed Officer Dean that the vehicle was purchased by his girlfriend, and that she had the registration.

Officer Dean returned to the vehicle and asked Sparks where he was traveling. Sparks stated that he was traveling from Oklahoma to Indiana to see his wife, who had just had a baby, and that he wanted to get there as soon as possible. Inasmuch as Spearfish is located in the far west-central area of South Dakota, some ten miles from the Wyoming border, Officer Dean began to wonder about the highly circuitous route Sparks had chosen and inquired further about Sparks' travel plans, whereupon Sparks began to stammer and stutter. Officer Dean asked Sparks what was in the trailer and if Sparks would allow him to look inside. Sparks indicated that he did not mind if Officer Dean looked in the trailer and gave him a key to unlock it.

Inside the trailer, Officer Dean found a motorcycle with a license plate that was reported stolen. Officer Dean arrested Sparks for possession of a stolen license plate and placed Sparks in Officer Dean's patrol car. By this point in time, other officers had arrived at the scene. The officers conducted a "cursory search" of the vehicle and found a baggie containing a white powdery substance, a .45 caliber handgun with a

loaded magazine, and a black ski mask. The powder later proved to be amphetamine. The serial number on the handgun identified it as stolen. Using this information, the officers secured a search warrant and thoroughly searched the vehicle, yielding additional weapons and narcotics.

Sparks filed a Motion to Suppress Evidence. A magistrate judge recommended that the district court deny the motion. Sparks filed his objections to the magistrate judge's findings and recommendations. On review, the district court adopted the magistrate judge's findings and recommendations, denying Sparks' motion. Sparks entered a conditional plea of guilty to two drug and weapons counts, was sentenced to a total of 180 months of confinement, and now appeals the district court's denial of his suppression motion.

## II. Analysis

A district court's determinations regarding the Fourth Amendment are reviewed de novo. The findings of fact by the district court are examined for any clear error. *United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996). Because we find no errors with the district court's findings of fact, we adopt them in full.

On appeal, Sparks contends that Officer Dean was not authorized to make the initial traffic stop. He further contends that if Officer Dean was authorized to make the stop, the scope of the stop was unreasonable and Officer Dean was not at liberty to ask additional questions of Sparks or request the search. Finally, Sparks contends that his consent to search was not voluntary and did not discharge any prior taint of unconstitutionality.

### a. Suspicion for the Initial Stop

Regarding his first contention, Sparks essentially argues that Officer Dean should not have been allowed to check his license plate without reasonable suspicion. This position is unfounded. At the outset, we note that this issue is in no way analogous to stopping drivers simply to determine whether the driver's license and registration were valid. *Delaware v. Prouse*, 440 U.S. 648 (1979). A superficial investigation, such as that conducted by Officer Dean, has no impact whatsoever on the rights of the driver, as no person possesses a privacy interest in their license plates. *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989). Consequently, we find that Officer Dean was justified in checking Sparks' license plates.

Sparks further argues that Officer Dean did not possess reasonable suspicion to pull him over because the information Officer Dean received from the police dispatcher was incorrect. However, Sparks put forth no evidence of a lack of good faith required for such an argument to succeed. *United States v. De Leon-Reyna*, 930 F.2d 396, 399 (5th Cir. 1991) (en banc). It is clear that such a situation would merit application of the good-faith exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984).

Alternatively, if Officer Dean had been informed of the mistake by the dispatcher before he initiated the stop, he would have also been informed that the license plates on the Suburban had expired one month prior. Therefore, he would again have had reasonable suspicion to initiate the stop. It is for these reasons that Sparks' first argument fails.

### b. Length of Encounter

Sparks contends that even if Officer Dean had the authority to stop him, the investigative stop was unreasonable in scope and violated his constitutional rights.[5] It is well settled that while an officer may possess reasonable suspicion to make an investigative stop, the length and scope of that stop may not exceed reasonable bounds. *United States v. Foley*, 206 F.3d 802, 805 (8th Cir. 2000). While Sparks does not take issue with the actual length of time he was detained, he does challenge the scope of the questioning.

Sparks provides testimony from Officer Dean stating that he was not going to ticket Sparks for the license plate violation, but Officer Dean continued to ask questions, as he was "digging for information." Because Officer Dean had decided not to ticket Sparks, Sparks argues that Officer Dean was not allowed to ask questions about Sparks' destination or request a search of the trailer. Sparks is mistaken, as the "reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and *asking the driver about his destination and purpose*." *Foley*, 206 F.3d at 805 (emphasis added). Consequently, Officer Dean was well within reasonable bounds to inquire as to Sparks' destination.

Sparks argues that Officer Dean was not permitted to expand the scope of the traffic stop to request permission to search Sparks' trailer. Sparks relies on the principle that once an officer's reasonable suspicion has dissipated, the officer should break off the investigative stop. *United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993). While Officer Dean had decided not to issue a ticket to Sparks for the license violation,

---

[5]We find that Sparks properly objected to the scope of Officer Dean's investigative stop and determine that the issue is properly before this Court without further discussion. Def.'s Objections to Magistrate Ct.'s Report and Recommendation for Disposition of Def.'s Mot. to Supp. at 3-4.

he is not required to turn a blind eye to new factors that present themselves in the process of the traffic stop. We have also previously stated that "[t]he mere fact that the officers' original ground for stopping [a suspect] dissipated does not prevent them from continuing their investigative stop based on new facts creating a reasonable articulable suspicion of criminal activity." *Watts*, 7 F.3d at 126. In our situation, the most suspicious fact that became present was the question of why Sparks was in western South Dakota when he stated he was driving from Oklahoma to Indiana. This statement would likely raise even the eyebrows of those who are not trained in the intricacies of law enforcement.

Such articulable suspicion was clearly created when Sparks failed to adequately explain why his trip from Oklahoma to Indiana placed him in western South Dakota. Sparks' failure to offer an explanation for the suspicion-raising route he had chosen to accomplish his professed desire to see his newborn baby as soon as possible, coupled with his stuttering, stammering answers, amply justified Officer Dean's decision to expand the scope of the investigative stop in the light of these newly developed facts.

Sparks' argument that the investigative stop was unreasonable in scope is without merit.

### c. The Effect/Validity of Sparks' Consent

Sparks makes a two-fold argument regarding his consent and its effect. Sparks argues first that the district court incorrectly stated that Sparks' consent to search would have cleared any possible unconstitutional practices on the part of Officer Dean. Second, Sparks argues that his consent was not voluntarily given. Having already determined that there was nothing unconstitutional about Officer Dean's investigative stop, we need not decide these issues. The issues of whether Sparks' consent would have cleared up any previous taint or whether it was voluntarily given are purely hypothetical and deciding such issues is not an exercise in which we will engage.

Accordingly, the district court's denial of Sparks' Motion to Suppress is hereby AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT