The appellee, Leslie Jean Odom, was indicted on a charge of unlawfully possessing a controlled substance. He entered a plea of not guilty and moved to suppress evidence of methamphetamine that had been found in his possession. After a hearing, the trial court granted the motion. *Page 889 
The court found that Odom had purchased a number of items that were "precursors to the manufacture of methamphetamine" but that "[p]ossession of these objects alone is not illegal." The court further found that the police "had a reasonable suspicion sufficient to stop and question the defendant" but "did not have probable cause to believe that the defendant had methamphetamine in his truck or to obtain a search warrant to search his truck."
The State appeals from the trial court's order granting the motion to suppress. Rule 15.7(a), Ala.R.Crim.P. The State contends that the trial court erred in holding that the officers did not have probable cause to search Odom's vehicle and person. The State argues that Odom's purchase of known precursors for the manufacture of methamphetamine, combined with the officers' observation of methamphetamine by-products in Odom's truck and their knowledge of Odom's recent arrest for a methamphetamine offense, provided the necessary probable cause. The State also argues that the search was based upon the officers' good-faith reliance on the search warrant issued by the district court.
At the suppression hearing, narcotics agent Dorteen Williams testified that police sergeant Steve Anderson had contacted her on June 21, 2001, about a possible controlled-substance violation. She reported to the parking lot of a Wal-Mart discount department store, and the officers at the scene gave her the following information: police investigator J.B. Mason had been working at his off-duty job at the Wal-Mart store when he saw the defendant purchase certain items that Mason had been trained to recognize as ingredients commonly used in manufacturing methamphetamine. Odom's purchases included 2 bottles of propane fuel, a set of stainless steel cookware, 4 packages of lithium batteries, 3 boxes of Equate brand cold and allergy medication, 4 boxes of Sudafed cold and allergy medication, and 12 bottles of antifreeze. Wal-Mart has the policy of notifying the police when customers purchase more than three boxes of cold medications. Mason telephoned Sgt. Anderson and advised him of Odom's purchases, and Sgt. Anderson sent Officer David Martin to the Wal-Mart store to investigate. Martin and Mason stopped Odom as he was placing his purchases into the toolbox of his pickup truck. In the bed of the truck, the officers saw several jars that contained the clear liquid and white and reddish residues commonly found where methamphetamine is being manufactured. The officers informed Odom of his Miranda[1]
rights, and he refused to consent to a search of his vehicle. Sgt. Anderson then contacted Agent Williams. Williams reported to the Wal-Mart store and obtained the information needed to request a search warrant. In addition to the information she had obtained from the other officers, Williams knew that Leslie Odom had a reputation of being involved in the distribution of illegal narcotics and that he had been arrested for trafficking in methamphetamine on April 19, 2001. Williams had personal knowledge of the process of methamphetamine manufacture, the defendant's reputation, and the defendant's previous arrest because she was a trained, experienced member of the West Alabama Narcotics Task Force, the agency that made the arrest. Williams submitted her affidavit to the Tuscaloosa District Court, and the court issued a warrant to search Odom's truck and person. In the pocket of the driver's side door, the officers found a plastic bottle wrapped in black tape.[2] Inside the bottle, they found *Page 890 
a plastic bag containing white powder. In Odom's pants pocket, the officers found another plastic bag containing white powder. Odom stipulated that the white powder was methamphetamine. Agent Williams testified that Equate and Sudafed brand of cold medicines contain pseudoephedrine, a precursor for manufacturing methamphetamine. She said that propane fuel, cookware, lithium batteries, and antifreeze also are used in the manufacture of methamphetamine.
In reviewing a trial court's decision on a motion to suppress evidence when the facts are not in dispute, this court applies a de novo standard of review. State v. Otwell, 733 So.2d 950 (Ala.Crim.App. 1999). Here, the facts are uncontested; the only issue is the trial court's application of the law. Although the court's finding of reasonable suspicion for the investigatory stop is not challenged, the concept of reasonable suspicion is addressed because it includes many of the factors upon which a subsequent determination of probable cause should be based.
 I. Reasonable Suspicion
The Fourth Amendment prohibition against "unreasonable searches and seizures" by the government extends to brief investigatory stops of persons or vehicles. Terry v. Ohio, 392 U.S. 1, 9 (1968). The reasonableness of such searches and seizures depends upon "a balance between the public interest and the individual's right to personal security." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). A police officer may conduct an investigatory stop if there is "a reasonable suspicion that the person to be stopped is engaged in some type of criminal activity." Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App. 1986).
In reviewing reasonable suspicion determinations, courts must look at the "`totality of the circumstances'" to see whether the detaining officer had a "`particularized and objective basis'" for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002), quotingUnited States v. Cortez, 449 U.S. 411, 417-418 (1981)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arvizu,534 U.S. at 273 (quoting Cortez, 449 U.S. at 418). A determination of probable cause should not be based on a "divide-and-conquer analysis" but should consider a series of acts, each of which is "perhaps innocent in itself," together in determining whether they warrant further investigation. Terry v. Ohio, 392 U.S. at 22.
Here, an off-duty police officer saw the defendant go through the checkout line "several" times to purchase items the officer had been trained to recognize as materials commonly used to manufacture methamphetamine. The items included a large quantity of cold medications containing pseudoephedrine, a "precursor chemical" listed in §20-2-181, Ala. Code 1975. A person who possesses a listed precursor chemical with the knowledge or intent that it will be used in the unlawful manufacture of a controlled substance commits a Class B felony. § 20-2-190(b), Ala. Code 1975. Based on the totality of the circumstances, the trial court correctly determined that the officers had a reasonable suspicion that the defendant was engaged in criminal activity.
In State v. Bulington, 783 N.E.2d 338 (Ind.Ct.App. 2003), a store employee told *Page 891 
police that two men had purchased 3 boxes of cold tablets at separate registers and had then gotten into the same vehicle. The court found that it was reasonable for an officer to infer that the men had attempted to purchase a methamphetamine precursor in a manner calculated to avoid suspicion. The court contrasted that situation with one in which a single customer makes a single purchase of 3 boxes of ephedrine, stating that the latter situation might prompt a report to police but, without more, would not necessarily give rise to suspicion sufficient to justify an investigatory stop.[3] See State v. Vereb,643 N.W.2d 342 (Minn.Ct.App. 2002) (Wal-Mart employee's report that two men made several trips to purchase large quantity of cold tablets, officer's knowledge that the tablets were common precursors in methamphetamine production, and officer's observation of speeding and evasive driving conduct provided reasonable suspicion to investigate defendant for conspiracy to manufacture methamphetamine); compare In reD.G. (No. 01-0752, Oct. 16, 2002) (Iowa Ct.App. 2002) (unpublished opinion in which investigatory stop based on Wal-Mart employee's report held not warranted because the only evidence shown to be available to officers at time of stop was purchase of unspecified number of lithium batteries and "not large" quantities of starter fluid and propane fuel).
 II. Probable Cause
"[P]robable cause requires information that is superior in both quantum (content) and quality (reliability) to that required for reasonable suspicion." Jones v. State, 631 So.2d 285, 287 (Ala.Crim.App. 1993). Probable cause to search a vehicle exists when all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and the vehicle contains contraband. Stallworth v.State, 645 So.2d 323 (Ala.Crim.App. 1994). In determining whether probable cause exists, the totality of the circumstances test must be applied. Illinois v. Gates, 462 U.S. 213 (1983).
Following Officer Mason's observations inside the Wal-Mart store, the officers had a reasonable suspicion that Odom was involved in manufacturing methamphetamine. They then saw the jars of liquid and residues in his truck. Agent Williams knew that these materials were common by-products of methamphetamine manufacture, and she knew that Odom had previously been arrested for manufacturing methamphetamine. Based on the totality of the this evidence, the officers' reasonable suspicion ripened into probable cause to believe that methamphetamine could be found in Odom's truck. The officers would have been justified in conducting a warrantless search.[4] However, they chose to seek a warrant before they searched the defendant's truck.
 III. The Warrant
When a search warrant is requested, "[t]he task of the issuing magistrate is simply to make a practical, common-sense *Page 892 
decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v.Gates, 462 U.S. at 238.
 "[T]he duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for . . . conclud[ing]' that probable cause existed.'"
Id., at 238-39.
In an affidavit for a warrant, the affiant may rely upon information obtained from fellow officers. Marks v. State, 575 So.2d 611, 614-15
(Ala.Crim.App. 1990). However, the agent must state in the affidavit that he is relying upon another officer. Id.
In her affidavit, Agent Williams set out the circumstances and purchases that had led to Odom's stop. She also described the methamphetamine by-products that were observed in his truck. However, Williams did not indicate that the purchases and by-products had been observed by other officers and then reported to her. Her affidavit therefore was insufficient to support a finding of probable cause. However, even though the affidavit was deficient, the trial court should not have granted Odom's motion to suppress.
The good-faith exception to the exclusionary rule provides that, when officers act in "objectively reasonable reliance on a warrant issued by a neutral, detached magistrate, conduct a search and the warrant is found to be invalid, the evidence need not be excluded." Rivers v. State,695 So.2d 260, 262 (Ala.Crim.App. 1997), citing United States v. Leon,468 U.S. 897 (1984). The Court has recognized only four circumstances in which the good-faith exception does not apply: (1) when the magistrate or judge relies on information that the affiant knew was false or would have known was false except for reckless disregard for the truth; (2) when the magistrate wholly abandons his judicial role and fails to act in a neutral and detached manner; (3) when the warrant is based on an affidavit that is so lacking in indicia of probable cause that belief in its existence is unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume its validity. Straughn v. State, [Ms. CR-01-1378, May 30, 2003] ___ So.2d ___, ___ (Ala.Crim.App. 2003), citing United States v. Leon, supra. None of those circumstances were present in this case.
The information in Agent Williams's affidavit was accurate and undisputed, and there is no indication that the issuing magistrate was not neutral and detached. Even though Williams's affidavit was incomplete, it did contain substantial indicia of probable cause. The warrant issued by the district court was not facially deficient, and the officers could reasonably rely on its validity. Therefore, the trial court erred in excluding the evidence seized by the officers.
Based on the foregoing, the trial court erred in granting Odom's motion to suppress the methamphetamine seized during the officers' search. The judgment of the trial court hereby is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, BASCHAB, SHAW, and WISE, JJ., concur.
[1] Miranda v. Arizona, 384 U.S. 436 (1966).
[2] Agent Williams did not identify the seized items in her testimony. The items were listed on the search-warrant return and inventory filed by the State.
[3] The court stated that they were deeply troubled by unwritten store policies that specify a "seemingly arbitrary" quantity of certain household items that may be purchased without suspicion and by the prospect of authorities acting on tips from "improperly trained or overly zealous" store employees. 783 N.E.2d at 348. The court noted that because "innocent" household items can easily be used to manufacture methamphetamine, sales that used to go unnoticed now result in heightened scrutiny and criminal investigation.
[4] The likely mobility of the vehicle provided an exigent circumstance. Mason said that they stopped Odom after he had gotten into the bed of the truck but before he got inside the vehicle.
 *Page 1