On Return to Remand 

WINDOM, Presiding Judge.
The State of Alabama appeals the Jefferson Circuit Court’s decision to suppress *1195 drug evidence seized during a warrantless search of a vehicle driven by Derrick Breeding. For the reasons that follow, this Court reverses the circuit court’s decision and remands this cause for further proceedings.
On April 17, 2010, a Jefferson County grand jury issued an indictment charging Breeding with trafficking 10 kilograms or more of cocaine, see § 13A-12-231, Ala. Code 1975, and with failing to affix a proper tax stamp, see § 40-17A-4, Ala.Code 1975. On June 8, 2010, Breeding filed a motion to suppress the drug evideneé seized from the automobile he was driving during a traffic stop.
On August 31, 2010, the circuit court, with Judge William Cole presiding, conducted a hearing on Breeding’s motion to suppress. The uncontested evidence presented during the hearing established the following. Federal agents with the Drug Enforcement Agency (“DEA”) utilized a confidential informant to arrange for individuals to pick up 15 kilograms of cocaine from a Flying J truck stop in Birmingham. On October 2, 2009, DEA agents, working with local law-enforcement officers, set up surveillance at the Flying J truck stop. Shortly after 5:00 p.m., a black Maxima automobile arrived at the location of the delivery. At that point, the confidential informant gave a suitcase containing 15 kilograms of cocaine to Carlos Hernandez,[1] Hernandez placed the suitcase in the trunk of the Maxima and got in the passenger seat. The Maxima left the truck stop and was followed by DEA agents until it was stopped by Officer Michael Turner of the Birmingham Police Department.
Officer Turner testified that he was informed of the. description and location of the automobile containing the 15 kilograms of cocaine. When Officer Turner located the Maxima, he followed it. At some point during the 10- to 15-minute drive from the Flying J truck stop, Officer Turner activated his émérgency lights and initiated a traffic stop because the Maxima was following too closely to another vehicle. Breeding was driving the vehicle, and Hernandez was. the passenger. , Officer Turner issued Breeding a citation for following too closely.
Officer Turner then asked Breeding if he would consent to a search of the vehicle, but Breeding declined. Officer Turner requested a canine unit on the scene and placed Breeding and Hernandez in his patrol car.
Officer Phillip Waid of the Birmingham Police Department’s canine unit responded to Officer Turner’s request. Officer Waid walked his canine around the Maxima to perform an “open-air” sniff, a method of detecting contraband whereby the canine smells the air around the vehicle for the odor of drugs. During the open-air sniff, one of the doors to the vehicle was open, and the canine put its paws on the seat. Officer Waid pulled the canine out of the vehicle and continued to walk it around the car. While walking around the car, the canine indicated that it detected drugs at the driver’s side door and at the rear of the vehicle. Officer Turner searched- the vehicle, during which he recovered a suitcase containing 15 kilograms of cocaine in the trunk.
*1196 On December 29, 2010, the circuit court entered a detailed order denying Breeding’s motion to suppress. Specifically, the circuit court found:
“On . or about June 8, 2010, the Defendant filed a Motion to Suppress. The hearing on said motion was held on August 31, 2010. After said hearing, the parties were given time to file briefs in support of their position[s]. .After reviewing the Defendant’s Memorandum in Support of Motion to Suppress, the facts outlined in said memorandum are substantially' correct. The defense argues that the reason given by authorities for stopping the Defendant’s car was that he was following too close to another vehicle. Furthermore, once the ticket for that offense had been signed by Defendant Breeding, Officer Michael Turner no longer had authority to hold Breeding or Hernandez at the scene. This argument ignores the fact that Officer Turner had been informed by other agents that there were drugs in the vehicle driven by Breeding. Based upon Officer Turner’s knowledge that drugs were in the vehicle, he was authorized to stop the vehicle and arrest the defendants without any traffic violation having occurred. Although similar delays in obtaining a K-9 have been approved by State and Federal appellate courts, any issue involving the length of the delay is obviated by the fact that all authorities involved in this investigation were aware that controlled substances had been received by the defendants and were in the trunk of the vehicle. Based upon this knowledge, the officers were authorized to arrest Breeding and Hernandez and search the vehicle based upon the automobile exception to the warrant requirement or to inventory the vehicle after the defendants’ arrest. The authorities’ probable cause to search the vehicle was only enhanced by the K-9’s positive indication on the rear of the vehicle. Contrary to the Defendant’s assertion, this Court does not believe that Arizona v. Gant, [556 U.S. 332,] 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), applies to a situation such as this where the officers have more than probable cause to believe that a controlled substance was in the trunk of the vehicle in question.
“Based upon the foregoing, the Defendant’s Motion to Suppress is Denied.”
(C. 13.) .
- In January 2013, Judge Cole was replaced by Judge Tracie A. Todd. Thereafter, on October 22, 2014, Breeding filed a second motion to suppress the drug evidence seized from the vehicle he was driving. “Th[e] case [was] set for a status hearing on October 28, 2014.” (C. 55.) At the status" hearing, the circuit court informed the parties that it would address Breeding’s new motion to suppress. (R. 4)[2] (“We are here this morning for a status hearing, and [defense counsel] has brought it to our attention that we have three motions to address. One is a renewed motion to suppress, is what I have; motion to suppress collected — well, it’s titled Defendant’s Motion to Suppress Illegally Collected Evidence.”). After hearing arguments from both defense counsel and the State, the circuit court took the issue under advisement. On November 12, 2014, the circuit court conducted another hearing to allow the State to answer some of the court’s concerns. At the conclusion of the healing, the circuit court granted Breeding’s motion to suppress. Specifically, the circuit court held:'
“According to both parties, the traffic stop leading to the search of the Defendant’s vehicle was the result of a video *1197 taped federal narcotic investigation. The State described the" incident as a ‘controlled ■ delivery.’ Both parties agreed that there was a meeting between an unknown Cl [confidential informant] and the Co-Defendant in this case. The meeting took place at a location designated by the federal agents executing the exchange of the narcotics from the Cl to the Co-Defendant. The Co-Defendant and the Cl allegedly reached an agreement. The narcotics were placed in the trunk of the vehicle. The vehicle was allowed to leave the scene. According to the state, the vehicle was trailed and observed by an airplane.
“At some point, the vehicle was pulled over by the Birmingham Police Department (BPD) for the traffic violation of following too close. The Defendant was asked to step out of the vehicle. Once outside of the vehicle, the Defendant was questioned by the initiating BPD officer. The officer issued the Defendant a citation for following too close, and returned the Defendant’s identification. The BPD officer then asked the Defendant if he would consent to a search of the vehicle. The Defendant declined. Another BPD officer arrived with a canine unit. The canine was led around the vehicle, and indicated the presence of narcotics. The BPD officers then proceeded to search the vehicle and seized the narcotics in the truck and the Defendant’s cell phone.
“The law clearly states that ‘[w]here a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception.’ Kinard v. State, 335 So.2d 924 (Ala.1976). The State contends that the war-rantless search of the Defendant’s vehicle was lawful as the result of a controlled delivery. The Court in Illinois v. Andreas, [463 U.S. 765,] 103 S.Ct. 3319 (1983), considered the lawful function of a controlled delivery as argued by the State. In Illinois v. Andreas, the Court describes the execution of a controlled delivery under circumstances similar to the following:
“‘The lawful discovery by common carriers or customs officers of contraband in transit presents law enforcement authorities with an oppórtunity to identify and prosecute the person or persons responsible for the movement of the' contraband. To accomplish this, the [sic] controlled delivery of the container to its consignee, allowing the contáiner to continue its journey to the destination contemplated by the parties. The person dealing in the contraband can then be identified' upon taking possession of and asserting dominion over the container.’
“Illinois v. Andreas, [463 U.S. at 769,] 103 S.Ct. 3319 [sic] at 3324.
“The Court in Illinois v. Andreas further explains:
“ ‘[T]he rigors and contingencies inescapable in an investigation.into illicit drug traffic make “perfect” controlled deliveries frequently impossible to attain. The likelihood that contraband may be removed or other items may be placed inside the container during a gap in surveillance depends on all the facts and circumstances, including the nature and uses of the container, the length of the break in surveillance, and the setting in which the events occur. A workable, objective standard that limits the risk of intrusion on legitimate privacy interest [sic] when there has been an interruption of surveillance is either [sic] there is a substantial likelihood that the contents of the container have been changed during the gap in surveillance.’
*1198 “Illinois v. Andreas, 103 S.Ct. 3319 [sic] at 3322-3325.[3]
“Based on this finding, the State’s description of the circumstances does not fall within the narrow conditions relating to a controlled delivery. Even if the j3tate was given the consideration of the incident being categorized as a controlled delivery, there was no evidence presented relating to the length of time . that lapsed between the exchange of the narcotics and the traffic stop. More importantly there was no evidence presented that the surveillance in this instance was uninterrupted.; More importantly, there is no evidence that the Defendant was involved with the drug exchange, or exhibited dominion or control over the drugs. According to the undisputed facts, the dialogue during the course of the drug exchange did not involve the Defendant. The facts as presented conclude that the Defendant never appears on a video, does not get out of the vehicle during the exchange, and is not confirmed to be present during this meeting. The State presented no evidence that the Defendant was the driver of the vehicle from the narcotic exchange to the traffic stop. Therefore, the State has failed to meet its burden in proving the essential elements of a controlled delivery that would substantiate a warrantless search of the Defendant’s vehicle.”[4]
(C. 58-59.) The circuit court then found that there was no probable cause to search the vehicle and that there was no reasonable suspicion to justify the continued detention of Breeding after the traffic citation had been issued. Thus, the circuit court suppressed the drug evidence seized from the vehicle Breeding was driving.
Thé ’State appealed the circuit court’s order suppressing the drug evidence found in the car Breeding was driving. Because the circuit court’s findings in its order conflicted with both the evidence presented at the suppression hearing and Breeding’s written admissions, this Court remanded the cause to the circuit court with the following instructions:
“[T]his case is remanded to the.circuit court with instructions for it to clarify whether it considered the evidence presented at the hearing on August 31, 2010. If the circuit court did not consider this evidence, it is instructed to give it due consideration and to issue an *1199 amended order either granting or denying Breeding’s renewed motion to suppress that includes specific findings. of fact.”
See (C. 154) (Breeding’s case summation in which he states: “During the sting operation, the confidential informant placed the suitcase in the trunk of a black Maxima. After the confidential informant successfully delivered the suitcase containing the cocaine, local law enforcement began to track the controlled substance. The cocaine was tracked using air and ground surveillance. The cocaine was never out of the eyes of law enforcement. Moments later the black Maxima was stopped by local law enforcement.”),. On May 5, 2015, the circuit court filed the record on return to remand. In its order on return to remand, the circuit court “reaffirm[ed] its prior factual and legal conclusions.” (C. on remand 15-16.)
Initially, this Court notes:
“ ‘ “When evidence is presented ore tenus to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); “[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,” Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make “ ‘all the reasonable inferences and credibility choices- supportive of the decision of the trial court.’ ” Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. “[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court.... Absent a gross abuse of discretion, a trial court’s resolution of [such] conflict[s] should not be reversed on appeal.” Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). However, “ ‘[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on' the evidence dé novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ ” State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). “ ‘ “[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as. to the court’s judgment.”’” Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App.2000).’ ”
C.B.D. v. State, 90 So.3d 227, 237 (Ala.Crim.App.2011) (quoting State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim.App.2005)). The relevant facts in the record are uncontested; therefore, the standard of review is de novo. Worthy v. State, 91 So.3d 762, 765 (Ala.Crim.App.2011) (citing State v. Hill, 690 So.2d 1201, 1203 (Ala.1996)); However, regardless of which standard of review this Court employs, the circuit'court’s order must be reversed.
This Court has repeatedly explained that warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the State establishes that the search or seizure falls within a recognized exception. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985). Exceptions to the warrant requirement include: 1) objects in plain view; 2) consen *1200 sual searches; 3) a search incident to a lawful arrest; 4) hot pursuit or emergency-situations; 5) probable cause coupled with exigent circumstances;' and 6) an investigatory detention and search for weapons pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995). Another recognized exception to the warrant requirement is the “automobile exception,” which allows law enforcement to search an automobile based on probable cause alone. State v. Black, 987 So.2d 1177, 1179 (Ala.Crim.App.2006) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)). Thus, this Court must determine whether the search of the vehicle Breeding was driving fell within one of these recognized exceptions to the Fourth Amendment’s warrant requirement.
As noted above, one recognized exception to the warrant requirement is the “automobile exception,” which allows law enforcement to search an automobile based on probable cause alone. Black, 987 So.2d at 1179 (quoting Labron, 518 U.S. at 940). Under the- “automobile exception” to the warrant requirement, “‘[a] warrantless search of a vehicle is justified where there is probable cause to believe the vehicle contains contraband.’ ” Harris v. State, 948 So.2d 583, 587 (Ala.Crim.App.2006) (quoting Lykes v. State, 709 So.2d 1335, 1337 (Ala.Crim.App.1997)). “ ‘Probable cause to search a vehicle exists when all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and thé vehicle contains contraband.’” Harris, 948 So.2d at 587 (quoting State v. Odom, 872 So.2d 887, 891 (Ala.Crim.App.2003)). “The level of evidence needed for a finding of probable cause is low.” State v. Johnson, 682 So.2d 385, 387 (Ala.1996). “In dealing with probable cause ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, and legal technicians act.” Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). “[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.” Stone v. State, 501 So.2d 562, 565 (Ala.Crim.App.1986) (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).
Further,
“[i]t is a ‘well-recognized principle that, where a group of officers is conducting an operation and there is at least minimal communication among them, [the appropriate course is to] look to the collective knowledge of the officers in determining probable cause.’ United States v. Esle, 743 F.2d 1465, 1476 (11th Cir.1984); see also United States v. Willis, 759 F.2d 1486 (11th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); United States v. Balsamo, 468 F.Supp. 1363 (D.Me.1979). ‘[P]robable cause may emanate from the collective knowledge of the police, though the officer who performs the act of ... searching may be far less informed.’ United States v. Hawkins, 595 F.2d 751, 752-53 n. 2 (D.C.Cir.1978), cert. denied, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979) (citing Smith v. United States, 358 F.2d 833, 835 (D.C.Cir.1966), cert. denied, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967), and Williams v. United States, 308 F.2d 326, 327 (D.C.Cir.1962)).”
Ex parte Boyd, 542 So.2d 1276, 1284 (Ala.1989).
The uncontested evidence before the circuit court established that a confidential informant working with DEA agents arranged to provide 15 kilograms of cocaine to an individual at a Flying J truck stop in *1201 Birmingham. The DEA agents in conjunction with local law-enforcement officers set up surveillance at the Flying J truck stop. Breeding and Hernandez arrived at the Flying J truck stop in a black Maxima. The confidential informant provided Hernandez the cocaine in a suitcase, and Hernandez placed the suitcase in the trunk of the Maxima. (C. 154.) “After the confidential informant successfully delivered the suitcase containing the cocaine, [federal and] local law enforcement began to track the controlled substance.” (C. 154.) “The cocaine was tracked using air and ground surveillance.” Id “The cocaine was never out of the eyes of law enforcement.” Id “Moments later the black Maxima was stopped by local law enforcement.” Id A search of the Maxima resulted in the recovery of the cocaine placed in the trunk “moment[s]” earlier. Id
These uncontested “facts and circumstances [were not only] sufficient to cause the officers to conscientiously entertain a strong suspicion” that the cocaine would be found in the trunk of the Maxima, but were sufficient to establish that the officers were certain that Breeding and Hernandez had cocaine in the trunk of their vehicle. Grotjan v. State, 500 So.2d 1258, 1259 (Ala.Crim.App.1986). Because the officers knew that Breeding and Hernandez were transporting cocaine in the trunk of their vehicle, they had probable cause to search the vehicle and to arrest its occupants. Therefore, the circuit court erroneously granted Breeding’s motion to suppress evidence of the cocaine seized from the trunk of the automobile.
Accordingly, the circuit court’s order suppressing the evidence is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, BURKE, and JOINER, JJ., concur.

. The pagination of the record restarts at the beginning of each hearing.

3. The language quoted by the circuit court is actually from the syllabus to the Supreme Court's opinion, not the opinion itself. See 463 U.S. at 765-66, 103 S.Ct. at 3321.

. The circuit court’s application of Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), to the facts of this case is puzzling. The question before the circuit court was whether law-enforcement officers had probable cause to search Breeding and Hernandez's vehicle. In Andreas, the Supreme Court did not address probable cause. Id. at 771. Rather, the Court addressed "whether an individual has a legitimate expectation of privacy in the contents of a previously lawfully searched container” after law-enforcement officers deliver the container to its intended recipient. Id. In other words, the question in Andreas is whether the recipient of a container holding drugs has standing to raise a Fourth Amendment challenge to a search of that container when law-enforcement officers had previously and lawfully searched the container. Id. The Court held that the recipient did not have a legitimate expectation of privacy in the contents of the container. Id. at 771-73, Here, no one questioned Breeding’s expectation of privacy in the trunk of the Maxima; therefore, Andreas does not apply. Further, the circuit court’s order appears to consider whether to suppress evidence based on its determination that the°State’s evidence would not be sufficient to sustain a conviction. The sufficiency of the State’s evidence to sustain a conviction is irrelevant when determining whether the search of a vehicle and seizure of evidence complied with the Fourth Amendment.