JOINER, Judge.
The State of Alabama appeals a pretrial order of the Montgomery Circuit Court suppressing evidence that, the State says, demonstrates Jarod Abrams's guilt of the crimes of first-degree possession of marijuana, see § 13A-12-213, Ala. Code 1975, obscuring a vehicle-identification number, see § 13A-8-22, Ala. Code 1975, and second-degree receiving of stolen property, see § 13A-8-18, Ala. Code 1975.
Statement of Facts and Procedural History
In March 2015, Officer Brandon Truss of the Montgomery Police Department was on patrol when he noticed a white Ford Crown Victoria automobile traveling in front of his patrol car. Although the vehicle was not violating any traffic laws, Officer Truss decided to "run the tag" by entering the license-plate characters into a computer database. According to Officer Truss, he routinely ran tags on vehicles as an investigatory tool because, he said, doing so can help uncover expired tags, switched tags, and stolen vehicles.
After running the tag on the white Ford Crown Victoria, Officer Truss learned that the tag on the vehicle was actually registered to a stolen vehicle.[1] As a result, Officer Truss pulled the vehicle over. The driver, later identified as Jarod Abrams, was the only occupant in the vehicle. As Officer Truss approached the driver's side of the vehicle, he noticed the strong odor of marijuana emanating from the rear. Officer J.E. Albrecht, who assisted Officer Truss with the traffic stop, later confirmed that the odor was marijuana.
When asked, Abrams provided a non-driver's identification card and registration information to Officer Truss. According to Officer Truss, the registration information matched the license plate displayed on the white Ford Crown Victoria but both the registration information and the license plate belonged to a different vehicle. When Officer Truss and Officer Albrecht checked the plate on the dashboard where the vehicle identification number ("VIN") was displayed, they noticed that another VIN plate appeared to have been glued on top of the original. They determined that that glued-on VIN plate belonged to another vehicle.[2] Additionally, Officer Albrecht testified *739 that an examination of the secondary VIN plate located on the inside door frame of the vehicle revealed that that plate had been scratched off and covered up. Based on this information, Officer Truss and Officer Albrecht arrested Abrams. Because of the marijuana odor emanating from Abrams's vehicle, they then searched the vehicle where they found marijuana in the trunk packaged into separate bags.
In January 2017, the Montgomery County grand jury indicted Abrams for first-degree possession of marijuana, see § 13A-12-213, Ala. Code 1975, obscuring a vehicle-identification number, see § 13A-8-22, Ala. Code 1975, and second-degree receiving of stolen property, see § 13A-8-18, Ala. Code 1975. On Friday, September 22, 2017, Abrams filed a motion to suppress any substances "and all other evidence of an incriminating nature found by law enforcement personnel in the defendant's vehicle or in the alleged actual or constructive possession of [Abrams]." (C. 52-57.) On September 25, 2017, before the State could file a response to Abrams's motion, the circuit court held a suppression hearing.
At the conclusion of that hearing, the circuit court took Abrams's motion under advisement. The court granted the motion the next day. In its two-sentence written order granting Abrams's motion, the circuit court also sua sponte dismissed the case against Abrams, even though such relief had not been requested in Abrams's motion to suppress. Thereafter, the State timely filed its notice of appeal.
Discussion
The State argues that the circuit court erred when it granted Abrams's motion to suppress evidence seized by Officers Truss and Albrecht when they pulled Abrams over and searched his vehicle. (State's brief, pp. 10-20.) Specifically, the State argues first that Abrams did not have a privacy interest in the license plate on the vehicle he was driving and that, therefore, Officer Truss's decision to "run" his plate number did not violate the Fourth Amendment of the United States Constitution. (State's brief, pp. 10-13.) The State further argues that, when Officer Truss's check of Abrams's license plate revealed that the plate belonged to a vehicle that had previously been reported stolen, Officer Truss then had sufficient reasonable suspicion to stop Abrams. (State's brief, pp. 13-20.) Finally, the State argues that any evidence obtained by the State after stopping Abrams's vehicle-specifically, the VIN plate and the marijuana-falls within the "plain view" and "plain smell" exceptions to the warrant requirement and, thus, did not violate the Fourth Amendment. Id. We agree with the State.
Initially, we note that the only evidence presented at the suppression hearing was the testimony of Officer Truss and Officer Albrecht. That evidence was undisputed. Regarding the proper standard of review to be applied in this case, this Court has held:
"In reviewing decisions of a trial court concerning a suppression of evidence, we apply a de novo standard of review when the evidence is not in dispute. State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996). Because the evidence is undisputed, and the only quarrel is with the application of the law to the facts, we will review the evidence de novo, 'indulging no presumption in favor of the trial court's application of the law to those facts.' Stiles v. Brown, 380 So.2d 792, 794 (Ala. 1980) (citations omitted)."
State v. Banks, 734 So.2d 371, 372 (Ala. Crim. App. 1999). With these principles in mind, we address the State's claim on appeal.
*740 The Fourth Amendment to the United States Constitution states:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
The United States Supreme Court has held that the protections of the Fourth Amendment extend to the states through the operation of the Due Process Clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961). "[T]he State's intrusion into a particular area ... cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.' " New York v. Class, 475 U.S. 106, 112, 106 S.Ct. 960, 89 L.Ed. 2d 81 (1986) (quoting Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967) (Harlan, J., concurring) ). Importantly, "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure ...." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed. 2d 1067 (1968).
In his motion to suppress, Abrams argued that Officer Truss's decision to run his license plate without a reasonable suspicion of criminal activity violated his rights under the Fourth Amendment. (C. 54.) The State argued, however, that the license plate was in "plain view" and, thus, that Officer Truss's decision to run the license-plate number without any prior suspicion of criminal activity was appropriate. (State's brief, pp. 10-13.)
Neither this Court nor the Alabama Supreme Court has addressed whether the Fourth Amendment requires a police officer to have reasonable suspicion before checking a vehicle's license-plate number in a database. In looking to other jurisdictions, however, we have found that several courts have held that a person has no privacy interest in a license-plate number and, thus, that a superficial investigation of a person's license-plate number in plain view is not restricted by the Fourth Amendment.
For example, the United States Court of Appeals for the Tenth Circuit has held on two occasions that license plates are "in plain view on the outside of the car" and thus, are "subject to seizure" because there is no reasonable expectation of privacy. United States v. Matthews, 615 F.2d 1279, 1285 (10th Cir. 1980) ; see also United States v. Walraven, 892 F.2d 972, 974 (10th Cir. 1989). The United States Court of Appeals for the Fifth Circuit has also held that "[a] motorist has no privacy interest in her license plate number." Olabisiomotosho v. City of Houston, 185 F.3d 521, 529 (5th Cir. 1999) ; accord United States v. Sparks, 37 F.App'x 826, 829 (8th Cir. 2002) (not reported in the Federal Reporter); Hallstein v. City of Hermosa Beach, 87 F.App'x 17, 19 (9th Cir. 2003) (not reported in the Federal Reporter). Additionally, the United States Court of Appeals for the Sixth Circuit has held that "there is no case law indicating that there can be any reasonable expectation of privacy in license plates which are required by law to be displayed in public on the front and rear of any vehicle on a public street." United States v. Batten, 73 F.App'x 831, 832 (6th Cir. 2003) (not reported in the Federal Reporter); see also Wayne R. LaFave, 1 Search & Seizure § 2.5(b) (4th ed. 2004) ("[I]t is apparent that when a vehicle is parked on the street or in a lot or at some other location where it is readily subject to observation *741 by members of the public, it is no search for the police to look at the exterior of the vehicle.").
Moreover, entry of this information into a law-enforcement computer database does not infringe on a person's privacy interest. Indeed, "running" a search for a license-plate number through a computer database has been deemed far less invasive than other government actions that fall outside the protections of the Fourth Amendment. See United States v. Ellison, 462 F.3d 557, 562 (6th Cir. 2006) (citing Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed. 2d 214 (1984) (holding that entering private property with "No Trespassing" signs to observe marijuana plants in an "open field" not visible from outside the property did not implicate the Fourth Amendment) ); Dow Chem. Co. v. United States, 476 U.S. 227, 239, 106 S.Ct. 1819, 90 L.Ed. 2d 226 (1986) (holding that photographing an industrial complex with a precision aerial-mapping camera not prohibited by the Fourth Amendment); California v. Ciraolo, 476 U.S. 207, 213-14, 106 S.Ct. 1809, 90 L.Ed. 2d 210 (1986) (holding that using aerial surveillance in public airspace to observe the curtilage of a private residence not prohibited by the Fourth Amendment); Smith v. Maryland, 442 U.S. 735, 745-46, 99 S.Ct. 2577, 61 L.Ed. 2d 220 (1979) (holding that placing a pen register on a telephone line to record the numbers dialed from a private residence not prohibited by the Fourth Amendment).
Here, during the suppression hearing, Officer Truss testified that, in March 2015, he was on patrol with Officer Albrecht when he decided to "run" the license-plate number of a white Crown Victoria automobile traveling in front of him. (Supp. R. 7, 12.)[3] Officer Truss stated that, although the driver of the vehicle-later identified as Abrams-had not violated any traffic laws, he routinely ran license-plate numbers through his patrol unit's computer while on patrol because, he said, it was a way to uncover expired tags, switched tags, and stolen vehicles. (Supp. R. 22-23.) According to Officer Truss, the only thing he did was type Abrams's license-plate number into his computer. (Supp. R. 7, 12.) He did not stop or pull Abrams over at that time. Id.
Alabama law requires that a license plate be displayed at all times on the rear of the vehicle so that it is plainly visible. § 32-6-51, Ala. Code 1975. Under the Fourth Amendment caselaw discussed above, it is apparent that Abrams did not have a reasonable expectation of privacy in his plainly visible license plate. Thus, Officer Truss was justified in running Abrams's license-plate number through his computer system, and no Fourth Amendment violation occurred.
At the suppression hearing, Officer Truss further testified that, after running Abrams's license-plate number in his computer, he learned that the license plate was registered to a different vehicle. (Supp. R. 7-8, 26.) This provided Officer Truss with sufficient reasonable suspicion to pull Abrams over.
After Abrams brought the vehicle to a stop, Officer Truss got out of his patrol car and walked toward the vehicle. As he approached the driver's side of the vehicle, Officer Truss stated that he noticed the strong odor of marijuana emanating from the rear area of the vehicle. (Supp. R. 8, 11.) Officer Albrecht confirmed that, after he arrived on the scene, he also smelled the odor of marijuana coming from the vehicle. (Supp. R. 26, 29.)
*742 Officer Truss made contact with Abrams and asked him for a license and registration information for the vehicle. (Supp. R. 8.) At that time, Abrams provided him with a non-driver's identification card and registration information. (R. 8, 10.) According to Officer Truss, the registration information matched the tag displayed on the white Ford Crown Victoria, but both the tag and the registration information belonged to a different vehicle. (Supp. R. 15.) When Officer Truss and Officer Albrecht moved to the front of the vehicle to check the VIN, they noticed that the VIN plate on the dashboard appeared to have been glued on top of the original. (Supp. R. 10, 27.) Officer Albrecht testified that the glued-on VIN plate belonged to a different vehicle. (Supp. R. 27.) He further testified that an examination of the secondary VIN plate located inside the doorframe of the vehicle revealed that the VIN plate in that location had been scratched off and covered up. (Supp. R. 27.) Based on this information, Officer Truss and Officer Albrecht arrested Abrams. (Supp. R. 10.) They then searched the interior of Abrams's car, where they found marijuana packaged in separate bags in the trunk. (Supp. R. 10, 27.)
In his motion to suppress, Abrams argued that the officers' warrantless search of his vehicle-specifically, the VIN plates and the trunk-violated his Fourth Amendment rights against unreasonable searches and seizures because, he said, he did not consent to the search, and the search did not fall within any of the exceptions to the warrant requirement. (C. 54.) The circuit court appeared to agree with Abrams's argument and granted his motion. The circuit court's decision, however, was erroneous.
First, with regard to the police officers' warrantless search and seizure of the VIN plate in the vehicle, this Court has previously stated
"It is well settled that warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the State establishes that the search or seizure falls within a recognized exception. Ex parte Hilley, 484 So.2d 485, 488 (Ala. 1985). Exceptions to the warrant requirement include: 1) objects in plain view; 2) consensual searches; 3) a search incident to a lawful arrest; 4) hot pursuit or emergency situations; 5) probable cause coupled with exigent circumstances; and 6) an investigatory detention and frisk pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Ex parte Tucker, 667 So.2d 1339, 1343 (Ala. 1995)."
State v. Cowling, 34 So.3d 717, 719-20 (Ala. Crim. App. 2009). Additionally, the United States Supreme Court has held that, because federal law requires a VIN to be in plain view, there is no reasonable expectation of privacy in the VIN for Fourth Amendment purposes. See New York v. Class, 475 U.S. 106, 114, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). Thus, because Abrams did not have a reasonable expectation of privacy in the VIN plate on the vehicle, no Fourth Amendment violation occurred when Officer Truss and Officer Albrecht inspected both VIN plates in his vehicle.
Next, with regard to the officers' search and seizure of the marijuana from the trunk of Abrams's vehicle, this Court has previously stated:
"Another recognized exception to the warrant requirement is the 'automobile exception,' which allows law enforcement to search an automobile based on probable cause alone. State v. Black, 987 So.2d 1177, 1180 (Ala. Crim. App. 2006) (citing *743 Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed. 2d 442 (1999) )."
Cowling, 34 So.3d at 719-20. Under the "automobile exception" to the warrant requirement, " '[a] warrantless search of a vehicle is justified where there is probable cause to believe the vehicle contains contraband.' " Harris v. State, 948 So.2d 583, 587 (Ala. Crim. App. 2006) (quoting Lykes v. State, 709 So.2d 1335, 1337 (Ala. Crim. App. 1997) ). " 'Probable cause to search a vehicle exists when all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and the vehicle contains contraband.' " Harris, 948 So.2d at 587 (quoting State v. Odom, 872 So.2d 887, 891 (Ala. Crim. App. 2003) ).
"The level of evidence needed for a finding of probable cause is low." State v. Johnson, 682 So.2d 385, 387 (Ala. 1996). "In dealing with probable cause ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act ...." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Stone v. State, 501 So.2d 562, 565 (Ala. Crim. App. 1986) (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969) ). Importantly, it is well settled that "the odor of burned marijuana emanating from an automobile is enough to provide probable cause to search the vehicle." Blake v. State, 772 So.2d 1200, 1202 (Ala. Crim. App. 2000). See also State v. Gargus, 855 So.2d 587, 592 (Ala. Crim. App. 2003) (holding that an officer's detection of "the odor of 'burnt marijuana smoke' emanating from [a] vehicle ... established probable cause" to search the vehicle); Key v. State, 566 So.2d 251, 254 (Ala. Crim. App. 1990) (same). Cf. Adams v. State, 815 So.2d 578, 582, n.4 (Ala. 2001) (holding that "where police officers smell the odor of burned or burning marijuana coming from a legally stopped automobile, police officers have probable cause to arrest all of the automobile's occupants ..."); State v. Breeding, 200 So.3d 1193 (Ala. Crim. App. 2015).
As noted above, at the suppression hearing, both Officer Truss and Officer Albrecht testified that they smelled the odor of marijuana emanating from the rear of Abrams's vehicle when they approached it after pulling him over. According to Officer Truss, this odor caused him and Officer Albrecht to search the inside of the vehicle, where they discovered marijuana packaged into separate bags in the trunk of the car. Based on the undisputed testimony of Officer Truss and Officer Albrecht, the officers had " 'probable cause to believe the vehicle contain[ed] contraband.' " State v. Cowling, 34 So.3d 717, 722 (Ala. Crim. App. 2009). Therefore, their search of Abrams's vehicle was justified under the "automobile exception" to the warrant requirement. Accordingly, the circuit court erred in granting Abrams's motion to suppress evidence seized during the search of his car.[4] Likewise, the circuit court's sua sponte dismissal of the charges, which was based on its granting of Abrams's motion to suppress, was erroneous and is due to be reversed.
Conclusion
For the foregoing reasons, the judgment of the circuit court is reversed, and this *744 cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Windom, P.J., and Welch, Kellum, and Burke, JJ., concur.

There is a discrepancy in the record as to the type of vehicle to which the license plate was registered. In their police reports, both Officer Truss and Officer J.E. Albrecht state that the license plate was registered to a stolen blue Ford Crown Victoria. (C. 58, 59.) The case report details included in the record indicate, however, that the plate belonged to a stolen Buick Lacrosse. (C. 63, 64.)

According to the record, that VIN belonged to a tan 1998 Mercury Grand Marquis automobile. (C. 22.)

Citations to the record from the suppression hearing are denoted with "Supp. R. ____."

Our resolution of this issue pretermits any need for consideration of the remaining issues that the State raises on appeal.